## CATE *v.* CATE.

### (*Knoxville.* September 27, 1888.)

VENDOR AND VENDEE. *Vendor's lien. Assignment of note as collateral.*

The *lien* or *equity implied*, in the absence of any reservation of an express lien, in favor of the vendor of land, as security for the purchase price, is not extinguished by the vendor's assignment of the notes given for the purchase price *as collateral security* for his debts.

Cases cited and approved: Green *v.* Demoss, 10 Hum., 371; Thompson *v.* Pyland, 3 Head, 537; Thorpe *v.* Dunlap, 4 Heis., 674; Cowan *v.* Sharpe, 11 Heis., 450; McWhirter *v.* Swoffer, 6 Bax., 342; Pillow *v.* Helen, 7 Bax., 545; 32 Ark., 258; 28 Ark., 66; 40 Miss., 778.

Cited and distinguished: Bowlin *v.* Pearson, 4 Bax., 343.

---

### FROM MEIGS.

Appeal from Chancery Court of Meigs County. D. C. TREWHITT, J., sitting by interchange.

V. C. & N. Q. ALLEN and W. L. HARBISON for Complainants.

BURKETT, MANSFIELD & TURLEY for Defendant.

LURTON, J. This case involves the question as to whether the lien which exists in favor of the vendor of land, conveyed without reservation of an express lien, has been lost by the transfer of the obligation of the vendee as collateral security. Complainant N. L. Cate being indebted to his co-complainant, B. F. Lillard, assigned to him, as collateral security, a note which had been executed by the defendant, M. E. Cate, as part consideration for

the sale of a tract of land, no lien having been
retained in the deed of conveyance. This note was
transferred to Lillard with the following indorse-
ment: " This note is this day assigned to B. F.
Lillard as collateral security to secure a debt of
one thousand dollars and interest due him from
me." At the time of the assignment Lillard exe-
cuted a receipt for the note, reciting that it had
been transferred as collateral security, and " is to
be collected by me, and net proceeds to be ap-
plied to payment of the two notes due me as here-
inbefore described, *the legal title to said note to re-
main in N. L. Cate,* but the right to collect and
apply proceeds as herein indicated is conveyed to
me." N. L. Cate and B. F. Lillard join in this
bill and seek a decree subjecting the land sold de-
fendant to a lien for the payment of this note.
The doctrine that the vendor of land has an equity,
often designated as a lien, to secure the purchase
money, which may be enforced against the vendee
and his heirs or assignees with notice, is well set-
tled. The ground upon which the equity rests is
much controverted, and it would perhaps be unre-
munerative to consider the opposing views. The
doctrine originated in the English courts of equity,
and they have steadily repudiated the idea that the
equity is one personal to the vendor, and therefore
hold that an assignment of the debt carries with
it the lien. Pomeroy Eq. Juris., § 1254; *Dry-
den* v. *Frost,* 3 My. & Cr., 670; *Payne* v. *Baker,*
1 Giff., 241.

Whatever room there may once have been for controversy, it has long been settled in this State that the lien does not pass to the assignee of the vendee's obligations. *Green* v. *Demoss*, 10 Hum., 371; *Thompson* v. *Pyland*, 3 Head, 537; *Tharpe* v. *Dunlap*, 4 Heis., 674; *Cowan & Dickerson* v. *Sharpe*, 11 Heis., 450; *Bowlin* v. *Pearson*, 4 Bax., 343; *McWhirter* v. *Swoffer*, 6 Bax., 342; *Pillow* v. *Helm*, 7 Bax., 545.

The doctrine is thus stated by Judge McKinney in the leading case of *Green* v. *Demoss:* "But this lien is a mere personal, equitable right in the vendor, and is not assignable. It looks only to the security of the vendor, and does not pass to the assignee of the vendee's obligation for the consideration money, and consequently cannot be enforced in his favor. The assignment of the vendee's notes as obligations for the purchase money is not, however, *ipso facto* an absolute discharge or extinguishment of the lien; it is only so conditionally. The lien is to secure the payment of the purchase money to the vendor. If, upon a transfer by the vendor of the vendee's note or obligation the former be discharged from all ultimate liability upon his endorsment; or if the assignment were without responsibility, on the part of the vendor, for the payment by the vendee, in either case this would amount to absolute payment, so far as the vendor is concerned, and the lien would be extinguished. But if the vendor is made liable upon his indorsement, or voluntarily takes back the note,

the lien will be regarded as merely suspended in the meantime, and he will be remitted to his equitable right, and may enforce the lien against his vendee as if no such assignment had been made."

In Arkansas, where the lien is held to be non-assignable, the courts hold an assignment as collateral security not to defeat the lien. *Blevins* v. *Royers*, 32 Ark., 258; *Carlton* v. *Buckner*, 28 Ark., 66.

So in Mississippi, where the rule is as in this State, it has been held that where the assignor repossesses himself of the note the lien revives. *Stratton* v. *Gold*, 40 Miss., 778.

The note in the case now under consideration has never been assigned in the sense that the vendor has parted with his title. The debt due from him was not paid by the assignment; on the contrary, if the vendee fails to pay his note to Lillard the assignor will continue to remain liable for the whole of his debt to Lillard. The effect of the indorsement to Lillard and of the receipt given by the latter is to render the transaction nothing more or less than a simple deposit of the note by way of collateral security. Assenting, as we do, to the doctrine of the non-assignability of such a lien, and holding it to be a mere personal, equitable right of the vendor, yet the facts of this case take it out of the general rule. The vendor is still the legal and equitable owner of this debt, and entitled, therefore, to a decree enforcing his lien, the proceeds to be applied upon his debt due to Lillard according to the agreement between the parties.

The case of *Bowlin* v. *Pearson*, 4 Bax., 343, is pressed upon us very zealously by the solicitor for the defendant as a case in point. That was a case of a bill filed in the name of the assignor for the use of the assignee, the note having been assigned. While it is true that the assignor had been made liable upon his indorsement, yet he had not repossessed himself of the note, nor had he brought any suit upon his own rights as an indorser. The case went off on the state of the pleadings, the Court holding that the lien had not passed to the assignee, and therefore he had no use for which the indorser could sue, the Court saying: " In equity, however, the party for whose use the suit is brought is the real party, and as he has no right to enforce, the bill must fail in any aspect of the case. Whether the indorser may or may not file a bill before payment of the note on becoming owner of it again, in this view makes no difference. He has brought no bill for his own use to enforce rights of his own, but only to enforce rights for his assignee, who has none."

It is easy to be seen that the case under consideration is to be distinguished from the one just referred to, and that it presents no real antagonism to the view herein expressed. The decree of the Chancellor will be affirmed in so far as to give to complainant, N. C. Cate, a decree for the debt and enforcing his lien, the net proceeds to be paid over on his debt to Lillard.

Appellant will pay costs of appeal.