## BARTLETT v. DOHERTY.

District Court, D. New Hampshire.
Nov. 12, 1934.

Forbes & Moreau, of Manchester, N. H., for defendant.

Demond, Woodworth, Sulloway & Rogers, of Concord, N. H., for plaintiff.

MORRIS, District Judge.

This is an action to recover money had and received and involves an interpretation of the so-called "Blue-Sky Law," Public Laws of New Hampshire, c. 284, entitled "The Sale of Securities."

Defendant has filed a demurrer alleging the unconstitutionality of the act and the failure of plaintiff's declaration to set forth a cause of action. The present contention relates to defendant's demurrer.

The plaintiff's writ, specifications, bill of particulars, and amended bill of particulars alleges in substance that the defendant was in 1929 engaged in the sale of securities in the state of New Hampshire; that one or more sales were made by the defendant to the plaintiff; that each of said sales was made in violation of chapter 284, entitled "The Sale of Securities," in that the sale in each case was made by an unregistered and unlicensed agent of the defendant. The defendant's demurrer therefore raises the question whether or not the sale made by an unlicensed agent of a licensed dealer gives the plaintiff any cause of action to recover back the purchase price.

■ Counsel in their briefs have not argued the question of the constitutionality of the statute, and, as said by Judge Brewster in the case of Doherty v. McAuliffe (D. C.) 7 F. Supp. 49, 53: "It is now too late to doubt that sales of securities are transactions which fall within the domain of those commercial activities upon which a state may exert its power to regulate in the public interest." Hall v. Geiger-Jones Co., 242 U. S. 539, 37 S. Ct. 217, 61 L. Ed. 480, L. R. A. 1917F, 514, Ann. Cas. 1917C, 643; Caldwell v. Sioux Falls Stock Yards Co., 242 U. S. 559, 37 S. Ct. 224, 61 L. Ed. 493; Merrick v. N. W. Halsey & Co., 242 U. S. 568, 37 S. Ct. 227, 61 L. Ed. 498.

The contention as to the constitutionality of the law is understood to be abandoned by counsel and is therefore overruled without further consideration.

■ The next contention reduced to its lowest terms involves the question of whether a sale made by an unlicensed agent of a licensed dealer is valid under the statute.

Public Laws of New Hampshire, c. 284, § 6, provides as follows: "No dealer in securities shall, in this state, by direct solicitation or through agents or salesmen, or by letter, circular or advertising sell, offer for sale or invite offers for or inquiries about securities, unless registered as a dealer under the provisions of this chapter."

Section 17, provides: "No salesman or agent shall in this state, in behalf of any dealer, sell, offer for sale or invite offers for or inquiries about securities unless registered as a salesman or agent of such dealer under the provisions of this chapter."

Section 18 provides: "Upon written application by a registered dealer, accompanied by a registration fee of ten dollars for each person, the commissioner shall, if he is satisfied that they are suitable persons, register, as agents or salesmen of such dealer, such persons as the dealer may request."

Section 20 provides: "The commissioner shall issue to each person so registered a registration certificate stating his name, residence and address, the name, principal place of business and the address of the dealer, and the fact that he is registered for the current calendar year as agent or salesman of the dealer."

Section 22 provides that: "All registrations of dealers or agents shall expire at the close of the calendar year."

Section 38 provides: "Whoever violates any provision of this chapter, or knowingly files with the commissioner or furnishes to him any false or misleading statements or information, shall be fined not more than two thousand dollars, or imprisoned not more than six months, or both."

As a defense to this action, the defendant relies upon the principle of the law of contracts that illegality to void a contract must be inherent and not collateral. Citing Restatement, Contracts, § 597; Williston on Contracts, § 1752.

Defendant claims that the New Hampshire act does not invalidate sales made by a nonregistered salesman, but merely subjects him to a penalty. As tending to support this contention, they cite McCallum v. McIsaac, 159 Tenn. 655, 21 S.W.(2d) 392, 393. That was a suit in which a dealer brought an action against a purchaser to recover the purchase price. The court held that the sale was valid even though made through an agent who was not registered and who had not paid his registration fee, and that the fact that the agent had subjected himself to a penalty did not impair the contract between the principals; that to invalidate the contract for illegality, the illegality must be inherent and not merely collateral. The court said: "Whatever the company could lawfully do in its own behalf, acting through its officers, it could lawfully delegate to an agent."

Other cases cited by the defendant are Miller v. Stuart, 69 Utah, 250, 253 P. 900; De Hoop v. Peninsular Life Ins. Co., 193 Mich. 380, 159 N. W. 500; and various New Hampshire cases which arose under the old act prohibiting the sale of liquor except by town agencies. Woolsey v. Bailey, 27 N. H. 217; Smith & Lougee v. Smith & Bannister, 27 N. H. 244; Banchor v. Warren, 33 N. H. 183; Fuller v. Leet, 59 N. H. 163.

Whatever may be said concerning the Tennessee case and other cases cited by defendant's counsel it seems to me that the question must turn on the intention of the New Hampshire Legislature in enacting the so-called Blue-Sky Law.

In the case of Albertson & Co. v. Shenton, 78 N. H. 216, 98 A. 516, 517, Parsons, C. J., says: "As a general rule, if not invariably, the imposition of a penalty for the doing of an act is held to be equivalent to an expressed prohibition of the act. Brackett v. Hoyt, 29 N. H. 264; Roby v. West, 4 N. H. 285, 289, 17 Am. Dec. 423."

The question involved in the case was the New Hampshire Hawkers and Peddlers Law (Laws 1897, c. 76), prohibiting going about exposing for sale or selling goods without first obtaining a license. The court holds that the contract of sale was expressly prohibited and that the purpose of the law was to protect the public by preventing unsuitable persons, those not of good moral character, from engaging in the business regulated.

In the case of Johnson v. Boston & Maine R. R., 83 N. H. 350, 143 A. 516, 517, 61 A. L. R. 1178, Peaslee, C. J., says: "A statute requiring a license for the doing of certain acts makes the unlicensed actor a wrongdoer. He cannot claim a legal right which is dependent upon such illegal conduct." This was said with reference to an unlicensed operator of a motor vehicle.

The case of Karamanou v. H. V. Greene Co., 80 N. H. 420, 124 A. 373, 374, involved the same statute now before the court for construction. In that case the wrong of which the plaintiff complained was the sale to him by the defendant of certain securities of less value than the amount he paid for them. The case differs from the instant case only in the fact that the sale was made by a dealer whose license had been revoked. It was held that where contracts are prohibited for the protection of one set of men from another set of men, the parties are not in pari delicto, and the person injured after the transaction is completed may bring his action and defeat the contract, and that an action for money had and received lies to recover money paid for securities sold without a license in violation of the New Hampshire statutes.

Parsons, C. J., says: "The statute under consideration was passed for the protection of men such as the plaintiff. The sale only is penalized, not the purchase. If the plaintiff has paid money or other thing to the defendant under the prohibited contract, the defendant cannot set up a title to such money or thing under the contract made in violation of law, and the plaintiff will be entitled to recover without proof of the defendant's bad faith or the lack of value in the securities if he returns them. Edgerly v. Hale, 71 N. H. 138, 147, 148, 51 A. 679; Edward v. Ioor, 205 Mich. 617, 172 N. W. 620, 15 A. L. R. 256."

In the instant case the law is just as specific in requiring that agents and salesmen be registered as that dealers be registered.

Section 6 prohibits a dealer from making sales through any agent or salesman unless he is registered. Section 17 specifically requires registration of agents and salesmen and provides that dealers shall secure the registration of their salesmen. Upon the facts as we understand them, the plaintiff in this case had not secured registration for his agent who made the sale. When he accepted the contract, he must have known or at least should have known that it was made in violation of law.

Upon the authority of the New Hampshire cases last above cited, the defendant's contention that the law does not specifically invalidate the contract cannot prevail. A law which would require a dealer to obtain a license before making a sale of securities but would permit such dealer to avoid the effect of the law by making sales through an unregistered agent would practically nullify the purpose of the Legislature which I hold to be the protection of the public by preventing unsuitable persons from engaging in a business of selling securities.

It follows that the defendant's demurrer must be overruled on both grounds.